# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JONATHAN BRECKENRIDGE-MITCHELL (f/k/a JONATHAN KIMES),<br><br>Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>Defendant. | Case No.: 4:21-mc-9072 |

## MOTION TO CONFIRM ARBITRATION AWARD
## AND MEMORANDUM IN SUPPORT THEREOF

Plaintiff Jonathan Breckenridge-Mitchell (f/k/a Jonathan Kimes), pursuant to 9 U.S.C. §§6 and 9, respectfully requests an Order (1) confirming the Award of the Arbitrator in the arbitration between Plaintiff and Defendant DST Systems, Inc. ("DST"), and (2) directing that judgment be entered in Plaintiff's favor in the amount of $26,650.00 offset by the amount of $4,211.32 for the Ruane set-off for a new award of $22,438.68, plus attorney's fees of $202,614.10, and reasonable out of pocket expenses and statutory costs of $77,219.95, and pre-judgment interest, as awarded in a Final Arbitration Award. A true and correct copy of the Final Arbitration Award is attached hereto as **Exhibit A**.

## PARTIES

1. Plaintiff was, at all times pertinent hereto, a participant, as defined by 29 U.S.C. § 1002(7), in the DST Systems, Inc., 401(k) Profit Sharing Plan (the "Plan") and a party to the DST Arbitration Program Agreement and a resident of Kansas.

2. DST is a corporation organized and existing under the laws of the State of Delaware with its principal please of business in Kansas City, Missouri. DST was, at all times pertinent

1

hereto, the sponsor and administrator of the Plan and a designated fiduciary of the Plan under 29 U.S.C. §§ 1002, 1102. DST was also, at all times pertinent hereto, a party to the DST Arbitration Program Agreement.

## JURISDICTION AND VENUE

3. Jurisdiction is proper pursuant to 9 U.S.C. §9 and 28 U.S.C. §1332(a)(2).

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

## BACKGROUND

5. This is an action to confirm an arbitration Award and for entry of judgment pursuant to the Federal Arbitration Act, 9 U.S.C. §1, et seq. The arbitration and Award in this case arises from an Arbitration Program Agreement (the "Agreement") that was declared valid and enforceable by this Court in the matter captioned *Ducharme v. DST Sys., Inc.*, No. 4:17-CV-00022-BCW, 2017 WL 7795123 (W.D. Mo.) and in the matter of *Rob Parrott v. DST Systems, Inc.*, 4:21-mc-09012-NKL (W.D. Mo.). A true and correct copy of the Agreement is attached as **Exhibit B** hereto.

6. The parties' underlying dispute arises from DST's failure to monitor and ensure the rebalancing of an overly concentrated investments in the DST Systems, Inc., 401(k) Profit Sharing Plan (the "Plan"). *See e.g., DuCharme v. DST Systems, Inc.*, 4:17-CV-00022-BCW, Amended Complaint dated February 8, 2017, ECF No. 22; *Ostrander et al., v. DST Systems, Inc.,* 4:20-CV-00973-BCW, Petition dated December 10, 2020, ECF No. 1-1.[1]

---

[1] On February 26, 2016, DST duly amended the Plan to "make clear that [the] Arbitration Policy applies to all claims *arising out of or relating to* ***the Plan***." *DuCharme*, Dkt. Nos. 39-3 (attached hereto as **Exhibit C**.) DST affirmed to the Court in *DuCharme* that "[t]he Amendment was duly adopted by the Compensation Committee in accordance with the amendment provisions laid out in the Plan and is therefore ***valid and binding on the Plan***." *See Ducharme*, Dkt.

2

7. Pursuant to the valid and enforceable Agreement and guided by this Court's decision in *DuCharme v. DST Systems, Inc.*, No. 4:17-cv-22-BCW, 2017 WL 7795123 (W.D. Mo. June 23, 2017) (order granting motion to compel arbitration),[2] the parties' dispute was submitted to the American Arbitration Association and assigned AAA Number 01-19-0004-4449.

8. The Arbitrator, Honorable Anne Ashby, found in favor of Plaintiff and awarded damages of $26,650.00 offset by the amount of $4,211.32 for the Ruane set-off for a new award of $22,438.68.

9. The Arbitrator awarded $202,614.10 in attorneys' fees and $77,219.95 in reasonable out of pocket expenses and statutory costs.

10. The Agreement states that DST "may serve written notice of an Arbitration Appeal: (1) within 60 days after the Arbitration decision if no reconsideration or other motion is filed within 30 days after the Arbitration decision; or (2) if a reconsideration or other motion is filed within 30 days after the Arbitration decision, then within 30 days after a decision by the Arbitrator on the reconsideration motion or other motion." *See* Agreement (Ex. B).

---

No. 39 (emphasis added) (attached as **Exhibit D**). Additionally, as DST explained when it sought and obtained an order from this Court compelling individual arbitration, the Amendment "incorporates the terms of DST's Arbitration Agreement *into the Plan*, and thereby **explicitly binds the Plan** to the terms of that Agreement." *DuCharme*, Dkt. No. 47 (emphasis added) (attached as **Exhibit E**).

[2] On July 14, 2017, Mr. James DuCharme, a participant in the Plan, filed a Class Action Complaint in the U.S. District Court for the District of Missouri captioned *DuCharme v. DST Systems, Inc.,* Case No. 4:17-cv-00022-BCW (W.D.Mo.). On February 22, 2017, DST filed a Motion to Compel Arbitration and to Dismiss. On June 21, 2017, the district court ordered that "the Arbitration Agreement at issue is valid and Ducharme's claims for breach of fiduciary duty fall within the Arbitration Agreement's scope." *Ducharme*, 2017 WL 7795123. Thereafter, on June 18, 2018, DST sent a letter to all Plan participants bound by the Arbitration Agreement advising them that they may "initiate an individual arbitration proceeding under the Arbitration Program" by submitting a written request to DST. *See e.g.,* **Exhibit F**. To date, 554 participants (or beneficiaries) have chosen to file claims in arbitration against DST. During the past three years, the arbitrations have progressed through discovery, depositions, motion practice and merits hearings. To date, 342 Claimants have tried their claims against DST. 214 Claimants have received awards in their favor and 61 others are awaiting awards. In the matter of *Rob Parrott v. DST Systems, Inc.*, 4:21-mc-09012-NKL (W.D. Mo. April 25, 2021), the district court "having considered the … applicable legal authority," reaffirmed that the Arbitration Agreement "was declared valid and enforceable by this Court." *Parrot*, Dkt. No. 5 (attached as **Exhibit G**). After finding that "it has jurisdiction over th[e] matter, personal jurisdiction over Defendant, and that the United States District Court for the District of Missouri is a proper venue for the confirmation of the arbitration awards," the Court "ORDERED AND ADJUDGED that…the arbitration awards…are CONFIRMED in their entirety." *Id*.

11. The Arbitrator issued a final award on July 28, 2021. No party appealed the modified award after 30 days. The award is now final and subject to confirmation.

12. The Agreement states that, "after the conclusion of the arbitration process, … DST or the Associate may file a legal action within 30 days to enforce, vacate, modify, and/or appeal the final decision and award...in the federal district court with jurisdiction over the county in which the hearing was held.

13. The hearing was held virtually in Jackson County, Missouri.

## ARGUMENT

14. "The FAA embodies a national policy favoring arbitration; contains a narrow set of statutory grounds to vacate, modify, or correct an award; and supplies enforcement mechanisms for these types of actions." *Plocher Construction Co., Inc. v. Overseas Lease Group, Inc*., No. 4:17-MC-156 JAR, 2017 WL 2213739, *1 (E.D. Mo. May 19, 2017) (citation omitted). Proceedings to confirm an arbitration award are summary in nature, *id*., and confirmation is mandatory in the absence of certain limited exceptions. "Section 9 of the FAA provides that federal courts 'must grant' an order confirming an arbitration award 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA].'" *UHC Mgmt. Co., Inc. v. Computer Sciences Corp*., 148 F.3d 992, 997 (8th Cir. 1998) (emphasis added). "Congress did not authorize de novo review of such an award on its merits; it commanded that when the exceptions do not apply, a federal court has no choice but to confirm." *Id*. (emphasis added). The standard for reviewing an arbitration decision is "one of the narrowest standards of judicial review in all of American jurisprudence." *UMass Memorial Medical Center, Inc. v. United Food & Commercial Workers Union,* 527 F.3d 1, 4 (1st Cir.2008).

15. In reviewing arbitration awards, courts are "limited to determining whether the arbitrators did the job they were told to do, not whether they did it well, or correctly, or reasonably[.]" *Id*. (internal quotations and citation omitted).

16. No party to the arbitration alleged that the award was procured through fraud corruption or undue means. No party alleged that there was evidence of partiality or corruption in the arbitrator and all parties were permitted the opportunity to object to the arbitrators. All parties were afforded the opportunity to present their evidence in briefing and at a hearing. In short, Defendant can offer no authorized basis to delay the confirmation of this final award.

17. The Arbitrator did his job here. The parties stipulated to a "simple award" requiring that the arbitration state only whether Plaintiff was entitled to costs and/or attorneys' fees and, if so, the amount of costs and/or attorneys' fees. The Arbitrator did exactly as required. The Arbitrator found that Plaintiff was entitled to damages, costs and attorneys' fees and identified the amounts in its award.

18. Accordingly, in accordance with Section 9 of the FAA, the Courts must grant an order confirming an arbitration award.[3]

---

[3] On August 17, 2021, the U.S. District Court for the Southern District of New York granted a motion for class certification that purportedly includes the Plaintiff. The Court reasoned, in part, that language in the Arbitration Agreement barring class actions "runs afoul" of the Second Circuit's pronouncement in *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006). The Second Circuit, however, held long ago that "Congress did not intend to preclude a waiver of a judicial forum for statutory ERISA claims" and that "the FAA requires courts to enforce agreements to arbitrate such claims." *Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 122 (2d Cir. 1991). In fact, every circuit to consider the question holds that claims arising under ERISA are subject to mandatory arbitration. *See, e.g.*, *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc*., 847 F.2d 475, 478 (8th Cir. 1988) ("We find nothing…demonstrating Congress intended to prohibit arbitration of ERISA claims."); *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 513–14 (9th Cir. 2019). And the Supreme Court's decision in *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018), leaves no doubt that it would agree with the unanimous view of the courts of appeals.

The district court in New York did not address *Epic* nor did it address the substantive constitutional rights afforded by the Federal Arbitration Act as determined in a final order by this Court in *DuCharme v. DST Systems, Inc.*, and *Rob Parrott v. DST Systems, Inc.* While the district court acknowledged the pending arbitrations (and their overwhelming rate of success), it did not address the substantive rights of those who have *won* in arbitration nor did it contend with the significance of the limits of its jurisdiction over actions pending *or completed* outside the Second Circuit.

The court also ignored that the parties in arbitration have agreed, post-dispute, that all claims, counterclaims, and defenses asserted by the Parties are within the jurisdiction of the Panel and arbitrable, and that there are no preconditions that must be satisfied before proceeding with the Arbitration. Indeed, each arbitration is initiated by the filing of a written "Joint Submission for Arbitration," signed on behalf of both the claimant and DST. *See e.g.*, Joint Submission, attached here as **Exhibit H**. By jointly submitting their disputes to arbitration, the parties here have created an independent, post-dispute arbitration agreement, enforceable under the FAA. *See Ganguly v. Charles Schwab & Co.*, 2004 WL 213016, at *2 (S.D.N.Y. Feb. 4, 2004), *aff'd*, 142 F. App'x 498 (2d Cir. 2005) ("even if plaintiff could overcome the hurdle of the pre-dispute Schwab Account Application, there is no genuine dispute that he freely and willingly executed the post-dispute NASD Uniform Submission Agreement."); *Dean Witter Reynolds, Inc. v. Fleury*, 138 F.3d 1339, 1342 (11th Cir. 1998) ("the Submission Agreement, being an 'agreement in writing to submit to arbitration an existing controversy,' is 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'") (quoting 9 U.S.C. § 2); *Fisher v. Wheat First Sec., Inc.*, 62 F. App'x 472, 475 (4th Cir. 2003) ("The Uniform Submission Agreement completed and signed by Fisher is a valid and binding contract that has the force of modifying earlier agreements."). Thus, even if they were not *required* to submit to arbitration in the first place, the parties in arbitration have freely and willingly *agreed* to resolve their disputes in arbitration.

The court also did not address the substantive, protected right Plaintiff has in the amounts ***already awarded***. Nor did the district court address the orders entered by this Court, which are binding on the arbitration proceedings pending or completed in Missouri. Comity requires the district court in New York exercise care to avoid interfering with proceedings in other federal courts, including in the Western District of Missouri. *See e.g., Hoffman v. Blaski*, 363 U.S. 335, 348–49 (1960) (Frankfurter, J., dissenting); *Hayman Cash Reg. Co. v. Sarokin*, 669 F.2d 162, 169 (3d Cir. 1982). And in *Coan*, even the Second Circuit made a point to specifically mention that Congress *declined* to require a mandatory class under ERISA. 457 F.3d at 261 (quoting with approval the case of *Hebbard v. Colgrove*, in which the Court stated: "It is to be assumed that should this matter proceed as a class action, the members of the class will receive notice and be given an opportunity to participate *or withdraw from the action as they desire*." 28 Cal. App. 3d 1017, 1027 (1972) (emphasis added)). *See also Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012) ("Absent class members have a due process right to notice and an opportunity to opt out of class litigation when the action is 'predominantly' for money damages.").

In fact, absent class members have successfully attacked class actions in collateral proceedings on the grounds that they were denied the ability to opt out or exclude themselves from the class, *see, e.g., Brown v. Ticor Title Ins. Co.,* 982 F.2d 386, 392 (9th Cir.1992). *See also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S. Ct. 2965, 2974, 86 L. Ed. 2d 628 (1985) ("we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court.").

The Second Circuit, for example, holds that under *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), "[a]bsent class members have a ***due process right*** to notice and ***an opportunity to opt out*** of class litigation when the action is 'predominantly' for money damages." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012).

> After the Supreme Court's decision in *Dukes*, the right to notice and an opportunity to opt out under Rule 23 now applies not only when a class action is predominantly for money damages, but also when a claim for money damages is more than 'incidental.'

*Id. See also Shutts*, 472 U.S. at 812 (holding that in a non-"limited-fund" class action, "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court.").

A collateral attack is likely to succeed here since the district court in New York has no basis upon which to exercise personal jurisdiction over Plaintiff. *Waldron v. Raymark Indus., Inc.*, 124 F.R.D. 235, 237–38 (N.D. Ga. 1989) (observing that in a class action which allows plaintiffs to opt out, those plaintiffs remain in the case effectively waive the court's lack of personal jurisdiction over them, but that "in a mandatory class action, where plaintiffs are not permitted to opt out, no such waiver is present" and that "[a]ny attempt to exercise jurisdiction over such non-consenting plaintiffs would undoubtedly violate those plaintiffs' constitutional due process rights.").

# **CONCLUSION**

---

Additionally, "the FAA does not authorize a district court to enjoin arbitration; instead, § 16(a)(2) makes immediately appealable 'an interlocutory order granting ... an injunction against an arbitration that is subject to this title.' " *In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*, 71 F.3d 298, 302 (8th Cir. 1995). *See also* P*rima Paint Corp. v. Flood & Conkliff Mfg. Co.*, 388 U.S. 395, 404 (1967) ("arbitration procedure, when selected by the parties to a contract, [must] be speedy and not subject to delay and obstruction in the courts").

As was stated by the Eighth Circuit in *Piper Funds*:

> [the] contractual and statutory right to arbitrate may not be sacrificed on the altar of efficient class action management. As the Supreme Court said in *Dean Witter [Reynolds Inc. v. Byrd,* 470 U.S. 213, 220 (1985)], "[the FAA] was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered, and we must not ... allow the fortuitous impact of the Act on efficient dispute resolution to overshadow the underlying motivation."

71 F.3d at 303.

Moreover, although the court granted a motion to certify a class, the court did ***not*** enter an injunction. And to the extent it is argued the order can be construed as an injunction, the law forbids it. "A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction." *Hyundai Mipo Dockyard Co. v. AEP/Borden Indus. (In re Rationis Enters. of Pan.)*, 261 F.3d 264, 270 (2d Cir. 2001). The personal jurisdiction requirement applies even to injunctions/bar orders entered as part of a class action settlement. *Carlough v. Amchem Prod., Inc.*, 10 F.3d 189, 200 (3d Cir. 1993). And, "if the member has not been given the opportunity to opt out in a class action involving both important injunctive relief and damage claims, the member must either have minimum contacts with the forum or consent to jurisdiction in order to be enjoined by the district court that entertained the class action." *In re Real Est. Title & Settlement Servs. Antitrust Litig.*, 869 F.2d 760, 769 (3d Cir. 1989). Here, Plaintiff has *no* contacts with the forum and does *not* consent to jurisdiction.

Rather than engage with these fundamental issues, the district court in New York relied exclusively on the decision in *Cooper v. Ruane Cunniff & Goldfarb Inc.*, declining to *require* arbitration of an ERISA § 502(a)(2) claim against RCG. 990 F.3d 173 (2d Cir. 2021). The Court's decision in *Cooper* rested on whether the language of the Arbitration Agreement required Plan participants to arbitrate their claims against RCG, the third-party investment advisor. In *Cooper*, however, a crucial fact escaped the record: On February 26, 2016, DST duly amended the Plan to "make clear that [the] Arbitration Policy applies to all claims *arising out of or relating to **the Plan***."

The panel majority held that it would ***not*** adopt a "countertextual reading of an arbitration agreement that explicitly applied to a given circumstance." *Cooper*, 990 F.3d at 185. Indeed, the Court declared that only "in the *absence* of any such terms" that explicitly apply would it construe an arbitration agreement as inapplicable to claims arising out of or relating to an ERISA plan. *Id.* at 176 (emphasis added). As the dissent in *Cooper* stated, "[t]he Supreme Court has repeatedly instructed that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,' including when 'the problem at hand is the construction of the contract language itself.'" *Cooper*, 990 F.3d at 186 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Accordingly, as the dissent pointed out, "the Second Circuit has frequently applied this rule to resolve questions regarding the scope of an arbitration clause in favor of arbitration, even going so far as to explain that federal policy requires us to construe arbitration clauses as broadly as possible." *Id.* at 186–87 (internal quotation marks and citation omitted).

Here, the Arbitration Agreement *explicitly applies* to breach of fiduciary duty claims arising under the Plan, as DST proved in the matter of *DuCharme v. DST Systems, Inc*. And, unlike in *Cooper*, the parties in arbitration *agree* to arbitration (and have *already arbitrated*) their claims.

For these reasons, the non-final, non-binding order (which is subject to appeal) is irrelevant to the determination of whether the Court must affirm the Final Award in accordance with Section 9 of the FAA.

For the foregoing reasons, Plaintiff moves for an Order (1) confirming the Arbitration Award and (2) entering judgment for $26,650.00 offset by the amount of $4,211.32 for the Ruane set-off for a new award of $22,438.68, plus attorney's fees of $202,614.10, and reasonable out of pocket expenses and statutory costs of $77,219.95, together with post-judgment interest.[4]

Respectfully submitted,

/s/*J'Nan C. Kimak*
HUMPHREY, FARRINGTON & McCLAIN
Kenneth B. McClain   MO 32430
J'Nan C. Kimak #56596
221 West Lexington, Suite 400,
P.O. Box 900
Independence, Missouri 64051
Telephone: (816) 836-5050
Facsimile:  (816) 836-8966
kbm@hfmlegal.com
jck@hfmlegal.com

KAPKE & WILLERTH
George E. Kapke Jr.  MO 52114
Mike Fleming MO 53970
3304 N.E. Ralph Powell Road
Lee's Summit, MO 64064
Telephone: (816) 461-3800
Facsimile:  (816) 254-8014
ted@kapkewillerth.com
mike@kapkewillerth.com


THE KLAMANN LAW FIRM
John M. Klamann  MO 29335
Andrew Schermerhorn  MO 62101
4435 Main Street, Suite 150
Kansas City, MO 64111
Telephone: (816) 421-2626

---

[4] The parties have agreed that Claimant's Counsel will not collect, or be entitled to collect, more than 100% of costs and expenses incurred on a collective basis in the arbitration matters below.

Facsimile: (816) 421-8686
jklamann@klamannlaw.com
ajs@klamannlaw.com

WHITE, GRAHAM, BUCKLEY & CARR
William Carr   MO 40091
Bryan T. White MO 58805
19049 East Valley View Parkway
Independence, Missouri 64055
(816) 373-9080 Fax: (816) 373-9319
bwhite@wagblaw.com